UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LANGLEY PARTNERS, L.P., | No. C-05-4194 SC |
| Plaintiff, | ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS |
| v. | |
| TRIPATH TECHNOLOGY, INC., ADYA TRIPATHI AND DAVID EICHLER, | |
| Defendants. | |

## I. INTRODUCTION

Langley Partners, L.P. ("Plaintiff") brought this action against Adya Tripathi[1] and David Eichler[2] (collectively "Individual Defendants"), Tripath Technology Inc., (collectively with Individual Defendants, "Defendants" or "Tripath"), alleging, <u>inter alia</u>, securities violations, fraud and breach of contract.

Presently before the Court is Tripath's motion to dismiss Plaintiff's claims pursuant to Federal Rule of Civil Procedure ("FRCP") 12(b)(6).

The Court, having reviewed the parties' submissions, hereby GRANTS IN PART and DENIES IN PART Defendants' motion to dismiss.

## II. BACKGROUND

The following allegations are taken from Plaintiff's papers and will be assumed as true for purposes of this Order.

---

[1] Tripath's Chairman, President and Chief Executive Officer. Complaint ¶ 6.

[2] Tripath's Chief Financial Officer until his "departure on September 15, 2004." Complaint ¶ 7.

1    Plaintiff, a Delaware limited partnership residing in New
2 York, first filed the Complaint in the Southern District of New
3 York.[3]  Plaintiff's central allegation is that it "purchased
4 Tripath securities at artificially inflated prices on August 3,
5 2004, and has been damaged thereby."  Complaint ¶ 4 ("Compl.").[4]

6    On August 2, 2004, the parties entered into a stock purchase
7 agreement ("Purchase Agreement"), "pursuant to which Langley
8 purchased 1,000,000 shares of Tripath common stock at the purchase
9 price of $2 per share."[5]  Compl. ¶ 17.  In deciding to purchase
10 these securities, Plaintiff states that it "relied on [Tripath's]
11 public filings with the Securities and Exchange Commission," its
12 Prospectus and Prospectus Supplement, and the documents
13 incorporated by reference.  Id. ¶ 18.

14    Defendants, in a Form 10K filed on March 9, 2004 with the
15 Securities and Exchange Commission ("SEC"), stated that in
16 September 2003, Tripath had "announced the introduction of a new
17 breakthrough low cost power stage architecture platform...which we
18 call 'Godzilla' that can be used across the broad spectrum of

---

[3] The Honorable Harold Baer, on a motion of Tripath, transferred this case from the Southern District of New York because four class actions arising from the facts of this case were pending in the Northern District of California.  In December 2004, the Honorable Saundra B. Armstrong of the Northern District consolidated these actions.  In July 2005, the parties to the class actions filed a stipulation of settlement.  Plaintiff has filed a declaration stating that it properly and timely "opted out" of this settlement.

[4] Tripath is a publicly traded Delaware corporation based in San Jose, California, and designs and markets digital chips for use in consumer products.  Compl. ¶ 5, Defs'. Mem. at 2.

[5] Tripath securities were trading at $2.42 per share at the time of the signing.  Compl. ¶ 17.

-2-

audio amplifiers." Compl. ¶ 25.

On October 22, 2004, Tripath announced that net revenues for the third quarter of 2004 would be well below the $4-$4.5 million Tripath had put forth as its "revenue expectation" in July 2004. Compl. ¶ 39. In addition, Tripath announced that it might need to restate its revenues for the second quarter of 2004 and that its auditor, BDO Seidman, had resigned on October 18 and had "issued a letter asserting material weaknesses in Tripath's internal controls concerning the effectiveness of Tripath's Audit Committee and Tripath's ability to estimate distributor sales returns in accordance with SFAS no. 48." Compl. ¶ 39. Tripath's stock fell $0.75 per share from its closing price of $1.52 on October 22, closing at $0.77 per share on October 25, the next trading day. Id. ¶ 40.

On March 24, 2005, Defendants stated in an SEC filing, that it had "introduced our lower cost 'Godzilla' architecture products in January 2004 and began sampling them in certain customers' products in mid-2004. However, we have not received design-wins for these products to date." Id. ¶ 34.

Plaintiff asserts that had it "known the truth about Tripath's second quarter 2004 revenues, lack of internal controls, and lack of 'design wins' for the key 'Godzilla' product, Defendants would not have commanded anything close to the $2 per share they conned out of Langley." Plaintiff's Memorandum in Opposition to Motion to Dismiss at 9 ("Pl's. Mem.").

Plaintiff alleges that Defendants (1) have violated Section 10(b) and Rule 10(b)-5 of the 1934 Securities and Exchange Act

-3-

1  ("1934 Act"), (2) have incurred liability as control persons under
2  Section 20 of the 1934 Act[6], (3) have committed common law fraud,
3  (4) have breached their contract with Plaintiff, (5) have been
4  unjustly enriched, (6) should be suffered to have the Purchase
5  Agreement rescinded, (7) have violated Section 11 of the Act, and
6  (8) have violated Section 15 of the Act.[7]

## III.  LEGAL STANDARD

"[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  "In reviewing a 12(b)(6) motion, this Court must accept the factual allegations of the complaint as true and must draw all reasonable inferences in favor of the plaintiff." Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir. 1996); see also Usher v. City of Los Angeles, 828 F.2d 556, 561 (9th Cir. 1987).  The complaint need not set out the facts in detail; what is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  FRCP 8(a); see also La Salvia v. United Dairymen, 804 F.2d 1113, 1116 (9th Cir. 1986).  Thus, the Court's task "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  Cooper v. Parsky, 140 F.3d 433, 440 (2d Cir. 1998).

---

[6] This claim is asserted against only the Individual Defendants.  Compl. ¶ 64.

[7] This claim is asserted against only the Individual Defendants.  Compl. ¶ 101.

-4-

## IV. DISCUSSION

### A. First Claim: Violation of Section 10(b) of the Act and Rule 10b-5 Against All Defendants

Plaintiff contends that Defendants, having access to accurate inside information, knowingly made false statements about internal controls and revenue recognition in its SEC filings. Compl. ¶ 52. Also, Individual Defendant Tripathi "reaped nearly $2 million from insider sales of Tripathi shares during the second quarter of 2004 - the very period in which he participated in the scheme." Pl's. Mem. at 6. Individual Defendant Eichler "sold 50,000 Tripath shares on August 30, 2004, almost two months prior to [Tripath's] revelation of its improperly reported second quarter revenues, and just prior to his resignation and the resignation of Tripath's auditors." Id. at 8.

Defendants contend that Plaintiff has not met the heightened pleading requirements under Rule 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). Defendants' Memorandum in Support of Motion to Dismiss at 8 ("Defs'. Mem."). Specifically, Defendants contend that "Plaintiff does nothing more than point to Tripath's [October] 2005 announcements that it restated results for the second quarter of fiscal 2004 - originally announced on August 5-6, 2004." Id.

Section 10(b) of the Act, codified at 15 U.S.C. § 78j(b), makes it unlawful for any person to use or employ "any manipulative or deceptive device or contrivance" in violation of the SEC rules and regulations. SEC Rule 10b-5, promulgated under the authority of 10(b), makes it unlawful for any person to "make

-5-

untrue any statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading." Rule 10b-5 also makes it unlawful for any person to "engage in any act, practice or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

However straightforward the law and regulation may seem, pleading securities claims under them is a difficult task. First, such claims are subject to the heightened pleading requirements of Rule 9(b). "Rule 9(b) requires the inclusion of specific facts regarding the alleged fraudulent activity, such as the time, date, places, content of each fraudulent representation, the reasons that the representation is false, and the identity of the person or persons engaged in the fraud." In re Autodesk, Inc. Securities Litigation, 132 F. Supp. 2d 833, 840 (N.D. Cal. 2000), citing In re GlenFed Securities Litigation, 42 F.3d 1541, 1547-1549 (9th Cir. 1994). "The PSLRA added the requirement that the plaintiff specify each statement alleged to have been misleading and the reason or reasons why the statement is misleading." Id.

Second, a plaintiff must satisfy the requirements of the PSLRA, pleading scienter, falsity, and loss causation with particularity in order state a claim.[8]

---

[8] A fuller description is: "The basic elements of a Rule 10b-5 claim...are (1) a material misrepresentation or omission of fact, (2) scienter, (3) a connection with the purchase or sale of a security, (4) transaction and loss causation, and (5) economic loss." In re Daou Systems, Inc., 411 F.3d 1006, 1014 (9th Cir. 2005) citing Dura Pharmaceuticals, Inc. v. Broudo, 125 S.Ct. 1627,

-6-

1.  <u>Scienter and Falsity</u>[9]

To establish scienter, a plaintiff "must plead particular facts giving rise to a strong inference of deliberate recklessness." <u>In re Silicon Graphics, Inc. Securities Litigation</u>, 183 F.3d 970, 979 (9th Cir. 1999).  "[R]ecklessness in the § 10(b) context is, in the words of the Supreme Court, a form of intentional conduct."  <u>Id</u>. at 977 (citation removed).  The facts must demonstrate intent rather than mere motive and opportunity.  <u>Id</u>. at 974.  "The stricter standard for pleading scienter naturally results in a stricter standard for pleading falsity, because falsity and scienter in private securities fraud cases are generally strongly inferred from the same set of facts and the two requirements may be combined into a unitary inquiry under the PSLRA."  <u>In re Daou Systems, Inc.</u>, 411 F.3d 1006, 1015 (9th Cir. 2005).  A Court will consider whether the "total of plaintiffs' allegations, even though individually lacking, are sufficient to create a strong inference that defendants acted with deliberate or conscious recklessness."  <u>Id</u>. at 1022 (citation removed).

Plaintiff puts forth three sets of allegations in pleading scienter.  First, Plaintiff alleges that Tripath violated

---

1631 (2005).  Even if these elements are properly pled, the PSLRA "carves out a safe harbor from liability if the statements at issue were forward-looking and accompanied by meaningful risk warnings." <u>In re Cooper Mountain Securities Litigation</u>, 311 F. Supp. 2d 857, 866 (N.D. Cal. 2004).

[9] Because the Court dismisses this claim for its failure to meet the heightened pleading standards of PSLRA, it is unnecessary for the Court to examine whether it meets the standards of FRCP 9(b).

-7-

Generally Accepted Accounting Principles ("GAAP") by recognizing revenue "from sales that never occurred." Pl's. Mem. at 7. Second, Plaintiff alleges that the Individual Defendants sold Tripath shares during the relevant period. Id. at 8. Individual Defendant Tripathi "reaped nearly $2 million in proceeds" and Individual Defendant Eichler "sold 50,000 Tripath shares...two months prior to [Tripath's] revelation of its improperly reported second quarter revenues." Id. Third, Plaintiff contends that Defendants misrepresented the development and sales status of its "Godzilla" product. Id. at 7.

### (a.) Violations of GAAP

Plaintiff contends that the overstatement made in violation of GAAP "amounted to approximately 30% of Tripath's revenues for the second quarter 2004 - revealing an overstatement of significant magnitude that was not minor or technical in nature." Id. "Violations of GAAP standards can [] provide evidence of scienter." In re Daou Systems, Inc., 411 F.3d 1006, 1016 (9th Cir. 2005) (citation removed). However, a "general allegation that the practices at issue resulted in a false report of company earnings is not a sufficiently particular claim of misrepresentation." Id. (citation removed). Plaintiffs must allege sufficient information so that the Court "can discern whether the alleged GAAP violations were minor or technical in nature, or whether they constituted widespread and significant inflation of revenue." In re McKesson HBOC, Inc. Securities Litigation, 126 F. Supp. 2d 1248, 1273 (N.D. Cal. 2000).

Under GAAP, "revenue must be earned before it can be

-8-

recognized [that is,] the earnings process must be substantially completed and an exchange must have occurred before revenue can be recognized." Provenz v. Miller, 102 F.3d 1478, 1484 (9th Cir. 1996).

In assessing Plaintiff's claim, Tripath's October 2, 2004 announcement is worth quoting at length:

> Shipments made to customers during the third quarter are currently estimated to be between $1.9 million and $2.1 million.  Tripath is currently reviewing the return of $1.3 million of product to a distributor in the third quarter. This product had been shipped to customers by the distributor, and recognized as revenue by Tripath, in the quarter ended June 30, 2004.  The distributor paid for this product during the third quarter.  The Distributor [sic] will not return this product to Tripath.  Tripath may restate its revenue for the quarter ended June 30, increase its sales return reserve for the third quarter, which would reduce net revenue in the third quarter, or make other adjustments.

On January 31, 2005, Tripath's 8-K stated that Tripath's Audit Committee:

> concluded that approximately $1.4 million of [the above-described sale] did not meet the appropriate recognition criteria because a former employee of [Tripath] had agreed that the Distributor could return the product at the Distributor's discretion...This former employee had on this occasion agreed to a term of sale that was outside of [Tripath's] standard practices.  This term of sale was not referenced in the documentation related to the sale submitted to [Tripath's] finance department.

While these statements do raise an eyebrow of concern and may support an inference, they do not create a strong inference, of deliberate recklessness.  First, though perhaps sloppy, Tripath's sale to the Distributor was "substantially completed."  The Distributor paid for the product and would "not return this product to Tripath," indicating that the earnings process was substantially completed and an exchange occurred.  Second, the

-9-

January 31st announcement makes it clear that this perhaps sloppy accounting was an aberration from Tripath's standard practices, which is, at its worst, an instance of negligence, rather than, as the standard requires, an indication of "widespread and significant inflation of revenue."

### (b.) Insider Trading by Individual Defendants

Plaintiff alleges that the Individual Defendants sold Tripath shares during the relevant period. Pl's. Mem. at 8. Individual Defendant Tripathi "reaped nearly $2 million in proceeds" and Individual Defendant Eichler "sold 50,000 Tripath shares...two months prior to [Tripath's] revelation of its improperly reported second quarter revenues." Id.

"Unusual trading or trading at suspicious times or in suspicious amounts by corporate insiders has long been recognized as probative of scienter." Greebel v. FTP Software, Inc., 194 F.3d 185, 197 (1st Cir. 1999). However, "the trading must be in a context where defendants have incentives to withhold material, non-public information, and it must be unusual, well beyond the normal patterns of trading by those defendants." Id. at 198.

While Plaintiff has alleged that the trading by the Individual Defendants occurred during an allegedly suspicious time, it has not alleged that such trading was unusual for those Individual Defendants. Bare-bones allegations that Defendants were "privy to non-public information concerning its business [and] finances" and therefore the "Individual Defendants knew or recklessly disregarded the fact that adverse facts...had not been disclosed to, and were being concealed from, the investing

-10-

public," Compl. at ¶¶ 8-9, do not suffice as pleading facts with such particularity as to give rise to a strong inference of reckless disregard.

### (c.) Godzilla

On March 9, 2004, Tripath stated in its 10-K that it "announced our first four amplifier devices based on the new Godzilla, CMOS process and we are currently sampling these devices with various customers." Compl. ¶ 25. In July 2004, Tripath stated in its Form 8-K that it believed that it was "making good progess in securing additional design wins...based on feedback from various major...OEMS as well as in securing design wins with automotive OEMS for in-dash units." Id. ¶ 28. On March 24, 2005, Defendants stated in an SEC filing, that it had "introduced our lower cost 'Godzilla' architecture products in January 2004 and began sampling them in certain customers' products in mid-2004. However, we have not received design-wins for these products to date." Compl. ¶ 34.

The Court finds no plausible misrepresentation here. It simply doesn't make sense that Tripath deceived others when it stated in its March 2004 10-K that Tripath was <u>sampling</u> this product with various customers and then announced in July 2004 that is was making progress in securing "additional design wins...based on feedback." It does not state a claim for misrepresentation by showing that Tripath gave a general statement about a developing product and then, a few months later, said that good progress was being made and feedback was sent to Tripath regarding the sampling.

-11-

In sum, Plaintiff has not met the high pleading standard for scienter, even considering all allegations together. The Court finds that no sufficient basis exists to create a strong inference that the Defendants acted with deliberate recklessness.

### 2. Loss Causation

To establish loss causation, the PSLRA "expressly imposes on plaintiffs the burden of proving that the defendant's misrepresentations caused the loss for which the plaintiff seeks to recover." Dura Pharmaceuticals, Inc., 125 S.Ct. at 1633, quoting § 78u-4(b)(4).

Because the Court finds that Plaintiff has not properly pled a misrepresentation under the heightened pleading standard, the Court finds that Plaintiff cannot properly plead loss causation.

Based on the foregoing, the Court finds that Plaintiff has not properly pled a violation of Section 10(b) and Rule 10(b)-5. Accordingly, the Court GRANTS Defendants' motion and DISMISSES Plaintiff's claim.

### B. Second Claim: Control Person Liability under Section 20 of the Act

Plaintiff alleges that the Individual Defendants, in their official capacities as Board members and corporate officers, "were in a position of power and authority to cause Tripath to engage in the wrongful acts complained of," thereby incurring liability under Section 20 of the Act. Compl. ¶¶ 64-65.

Defendants contend that because Plaintiff has failed to adequately plead a primary violation of Section 10(b), Plaintiff cannot plead control person liability under Section 20.

-12-

To be liable under Section 20(a) of the 1934 Act, plaintiffs must be liable under another section of the Act. See <u>Heliotrope General, Inc. v. Ford Motor Co.</u>, 189 F.3d 971, 978 (9th Cir. 1999); 15 U.S.C. § 78t(a).[10]

Because Plaintiff has not established that Defendants are liable under another section of the 1934 Act, Plaintiff cannot state a claim under Section 20.

Accordingly, the Court GRANTS Plaintiff's motion and DISMISSES Plaintiff's claim under Section 20.

C.   <u>Third Claim:   Fraud</u>

Plaintiff contends that it relied on Tripath's false representations in deciding to purchase Tripath securities. Compl. ¶ 69.[11]

Defendants contend that Plaintiff has not pled the claim of

---

[10] Section 11 of the 1934 Act does not qualify as a "provision of this title [the 1933 Act] or of any rule or regulation thereunder."  15 U.S.C. § 78t(a).

[11] Plaintiff brings both state and federal claims.  Because the Purchase Agreement does not specify which state law applies to the contract, the Court must decide which state law applies.

If an action is transferred to another federal district, the receiving district must apply the choice of rules of the original forum state.  See <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 639 (1964).

As the receiving Federal District, this Court must apply the choice of law rules of New York State.

New York State Courts use the "grouping of contracts" or "center of gravity" theory, which "gives to the place 'having the most interest in the problem' paramount control over the legal issues arising out of particular factual context, thus allowing the forum to apply the policy of the jurisdiction 'most intimately concerned with the outcome of (the) particular litigation." <u>Auten v. Auten</u>, 308 N.Y. 155, 160-161 (N.Y. 1954).

The Court finds that New York law should be applied because the contract was signed in New York, the Plaintiff resides there, and the parties knew that the effects of the contract would be felt in New York.

-13-

fraud with particularity as required by FRCP 9(b).  Defs'. Mem. at 21.

Plaintiff has stated specific facts about who committed the alleged fraud (the Individual Defendants and Tripath), the content of the allegedly false representation (violations of GAAP), why it is a false representation (failure to inform investors of relevant information), and the identity of the persons engaged in the fraud (the Individual Defendants and Tripath).

Because this claim is adequately pled, the Court DENIES Defendants' motion to dismiss this claim for fraud.

D.   Fourth Claim: Breach of Contract and Rescission

Plaintiff contends that Tripath violated Paragraph (d) of the Purchase Agreement, thereby breaching the contract.

Defendants contend that the Complaint fails to state what act by Tripath constituted a violation of Paragraph (d).  "Paragraph (d) is a warranty that, as of the time the agreement was signed, there had been no material changes in the covered areas.  And nowhere in the Complaint does Plaintiff allege that one of the material changes warranted against had occurred as of August 2, 2004."  Defs.' Mem. at 22.

Paragraph (d) of the Purchase Agreement, in relevant part, states that "[s]ince the date of the last audited financial statements included within the SEC Reports...there has been no event, occurrence or development that has had or that could reasonably be expected to result in a material adverse effect on the Company's operations or business prospects."  Declaration of Sarah A. Good in Support of Motion to Dismiss ("Good Decl."), Ex.

-14-

1 at 2. Paragraph (d) also asserts that Tripath has not incurred any liabilities[12], that Tripath has not altered its method of accounting, that Tripath has not declared or made any dividend or distribution, and that it has not issued any equity securities to any officer or director, except pursuant to existing Tripath stock options plans. Id.

Plaintiff has stated a claim for breach of contract. In addition to alleged violations of Paragraph (d), Plaintiff incorporates by reference all preceding allegations, thereby bringing the alleged misrepresentations and omissions into play. By alleging these facts, Plaintiff has properly alleged that Defendants breached the Purchase Agreement by failing to disclose relevant information.

Accordingly, the Court DENIES Defendants' motion to dismiss this claim for breach of contract.

### E.  Fifth Claim:  Unjust Enrichment and Money Had and Received

Plaintiff alleges that Defendants have been unjustly enriched by the $2,000,000 Plaintiff paid to Tripath. Compl. ¶¶ 79-85. Plaintiff contends that Tripath should restore this money to Plaintiff. Id. ¶ 85.

Defendants contend that a plaintiff cannot bring a claim for unjust enrichment because the Purchase Agreement is a valid and enforceable contract.

---

[12] "...other than trade payables and accrued expenses incurred in the ordinary course of business consistent with past practice and liabilities [] not required to be reflected in the Company's financial statements." Good Decl. at 2.

-15-

"Under both California and New York law...an action in quasi-contract...does not lie when an enforceable, binding agreement exists defining the rights of the parties." Paracor Finance, Inc. v. General Electric Capital Corp., 96 F.3d 1151, 1167 (9th Cir. 1996).

It is not legally feasible for Plaintiff to bring these claims. The existence of the Purchase Agreement, a valid, enforceable contract defining the rights of the parties, forecloses the possibility of bringing a quasi-contract claim, such as these for unjust enrichment and money had and received.

The Court GRANTS Defendants' motion and DISMISSES Plaintiff's claims for unjust enrichment and money had and received.

F.   Sixth Claim:  Rescission

Plaintiff alleges that had it known about Tripath's misrepresentations, it would not have entered into the Purchase Agreement. Compl. ¶ 91. Tripath's conduct, moreover, operated as a fraud and deceit upon Plaintiff, depriving it of properly or legal rights or otherwise causing injury. Id. ¶ 92. Because of these facts, Plaintiff contends that it is entitled to rescission of the Purchase Agreement and "other agreements." Id. ¶ 93.

Defendants contend that because Plaintiff no longer has Tripath stock, the parties cannot, as required by rescission, be returned to status quo ante. Defs'. Mem. at 24.

When a Court rescinds an agreement, it has a duty to place the parties where they were before the contract was made. See Vitale v. Coyne Realty, Inc., 414 N.Y.S.2d 388 (N.Y.A.D. 1979). A suit to rescind a contract will not lie where the parties cannot

-16-

be restored to status quo ante. See Slater v. Slater, 240 N.Y. 557 (N.Y. 1925). However, the "terms upon which rescission may be granted where complete restoration of the parties to their former position is impossible rests in the sounds discretion of the trial court." Buffalo Builders' Supply Co. v. Reeb, 247 N.Y. 170, 176 (N.Y. 1928).

Even though the specific restoration of Tripath stock cannot be returned to Tripath, its value, if Plaintiff prevails, may be. Accordingly, the Court DENIES Defendants' motion.

On final note, Plaintiff asks for rescission of "other agreements." Plaintiff has not specified what other agreements these are, how these other agreements relate to this case, nor has Plaintiff disclosed their subject matter or terms. Without more, the Court cannot determine the legal feasibility of this contention based on these facts.

G.   Seventh Claim:   Section 11 of the 1933 Act

Plaintiff contends that because Defendants used improper accounting methods and had inadequate internal accounting controls, "Defendants lacked a reasonable basis for their statements regarding Tripath." Compl. ¶ 96. Plaintiff was therefore injured when it purchased Tripath stock because it relied on the registration statements and supplements based on these misrepresentations and failures. Compl. ¶¶ 95-98.

Defendants challenge this claim on the same basis as it challenged Plaintiff's claim under Section 10(b). Defs'. Mem. at 20. Specifically, Defendants ask the Court to dismiss this claim because it fails to meet the heightened pleading requirements of

-17-

FRCP 9(b).

Section 11 of the 1933 Act imposes civil liability on those who file a false registration statement. See 15 U.S.C. § 77k. Though not subject to the heightened pleading standards of PSLRA, Section 11 must still be plead with particularity under FRCP 9(b). See Falkowski v. Imation Corporation, 309 F.3d 1123, 1133 (9th Cir. 1996), amended by Falkowski v. Imation Corporation 320 F.3d 905 (9th Cir. 2003).  "To survive dismissal, plaintiffs must demonstrate, with particularity, (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment." In re Daou Sytems, Inc., 411 F.3d at 1028 (citation omitted).  It is important to note that "[n]o scienter is required for liability under § 11; defendants will be liable for innocent or negligent material misstatements or omissions." Id. at 1027 (citations and quotation marks removed).

Plaintiff has plead with particularity a claim under Section 11.  Specifically, as shown in the facts stated above for fraud, Plaintiff has stated specific facts that the registration statements allegedly omitted material facts about accounting methods and product development.  Accordingly, the Court DENIES Defendants' motion.

H. Section 15 of the 1933 Act Against Individual Defendants

Plaintiff contends that because the Individual Defendants "acted as a controlling person of Tripath within the meaning of § 15," they were in a position to "cause Tripath to engage in the

-18-

wrongful acts complained of herein."  Compl. ¶¶ 101-102.

Defendants contend that because Langley has failed to state a claim under Section 11, it cannot state a claim under Section 15. Defs.' Mem. at 20.

Section 15(a) of the 1933 Act "imposes joint and several liability upon every person who controls any person liable under sections 11 or 12."  In re Daou Systems, 411 F.3d at 1029, quoting 15 U.S.C. § 77o.

Because the Court has determined that Plaintiff stated a claim under Section 11, it can bring a claim under Section 15(a). Accordingly, the Court DENIES Defendants' motion to dismiss this claim.

## V.  CONCLUSION

The Court GRANTS Defendants' motion as to three of the eight claims.  Accordingly, the Court DISMISSES Plaintiff's claims for violations of § 10(b), violations of § 20, and unjust enrichment and money had and received.

The Court GRANTS Plaintiff thirty days from the date of this Order to amend the Complaint.  If Plaintiff fails to amend its claims by that date, the Court will consider these claims waived and therefore the Court will bar Plaintiff from bringing these claims.

IT IS SO ORDERED.

Dated:  March 7, 2006

_____
UNITED STATES DISTRICT JUDGE